UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAUREEN P. DAILEY,                                    **REPORT AND**
                                                      **RECOMMENDATION**
                          Plaintiff,
                                                      09-CV-0099(A)(M)
v.

MICHAEL J. ASTRUE
Commissioner of Social Security,

                          Defendant.
_____

     This case was referred to me by Hon. Richard J. Arcara to hear and report in

accordance with 28 U.S.C. § 636(b)(1)(B) [4].[1]  Before me are the parties' cross motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(c) [8, 10].  For the following

reasons, I recommend that defendant's motion be denied and that plaintiff's cross-motion be

granted in part and denied in part.


### PROCEDURAL BACKGROUND

     Pursuant to 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the

Commissioner of Social Security denying her application for Supplementary Security Income

("SSI").  Complaint [1].  Plaintiff filed an application for SSI on March 6, 2006, which was

denied (T30-34).[2]  A hearing was held before Administrative Law Judge Robert T. Harvey on

August 25, 2008 (T480-519).  Plaintiff was represented by Amanda R. Jordan, Esq. Id.  In a

decision dated September 26, 2008, ALJ Harvey found that although plaintiff was disabled, her

---

[1]    Bracketed references are to the CM/ECF docket entries.

[2]    References to "T" are to the certified transcript of the administrative record filed by
defendant.

drug and alcohol abuse were contributing factors material to the determination of disability and that, absent her substance abuse, plaintiff would be found not disabled (T12-23)  As a result, ALJ Harvey denied plaintiff's claim.  Id.  On January 12, 2009, the Appeals Council denied plaintiff's request for review, and ALJ Harvey's decision was adopted as the Commissioner's final decision (T4-6).  This action followed.

## THE ADMINISTRATIVE RECORD

Plaintiff sought SSI due to depression, post-traumatic stress disorder ("PTSD"), Hepatitis C, and mitral valve prolapse (T55).

### A.    Relevant Medical Evidence

#### 1.    Treatment at Kaleida Health

Plaintiff sporadically received substance abuse treatment at Kaleida Health in 2003 and 2005 (T251-261).  During this time, plaintiff was using heroin, cocaine and opiates (257-258).

From June 2006 through December 2007, plaintiff again received substance abuse treatment at Kaleida (T204-250).  On September 13, 2007, while still in treatment, plaintiff reported that she had used crack two days earlier (T250).  She also admitted to smoking crack on December 10, 2007 (T204).  Plaintiff was diagnosed with post-traumatic stress disorder, cocaine dependence, and Hepatitis C, as well as polysubstance dependence (T207, 213, 218).  Plaintiff has been treated with methodone, Seroquel and Effexor (T210).  As of September 13, 2007,

plaintiff had 15 previous rehab hospitalizations and 12 psychiatric hospitalizations.  Id.  She was

assessed with GAF scores of 50, 52, and 58 during this period (T207, 213, 218).[3]

### 2.     Treatment at Hope Haven

Plaintiff received in-patient treatment at United Memorial Medical Center, Hope

Haven from October 11, 2005 through November 10, 2005 (T115-135).  On discharge, she was

diagnosed with cocaine dependence, opiate dependence, and a history of psychosis (T125).  She

had abused alcohol four days prior to admission to Hope Haven, used marijuana two months

earlier, used heroin two weeks earlier, and used cocaine six months earlier (T116).

### 3.     Treatment at Medina Memorial Health Center

Plaintiff received treatment at the Medina Memorial Health Center for multiple

symptoms associated with the withdrawal from alcohol and cocaine use from March 17, 2006

through March 21, 2006 (T139).  She was prescribed methodone, Effexor and Seroquel.  Id.

### 4.     Treatment at Clearview Treatment Services

Plaintiff received in-patient treatment at Clearview Treatment Services from

March 21, 2006 through April 9, 2006 (T141-145).  She reported an extensive substance abuse

history (T192).

During her treatment at Clearview, plaintiff reported no mental health issues,

except for hearing voices on two occasions.  Frank Ferraro, M.D. attributed this to her possibly

---

[3]     "A GAF between 51 and 60 indicates 'moderate symptoms' . . .  or 'moderate difficulty in social, occupational, or school functioning.'".  Kohler v. Astrue, 546 F. 3d 260, 261 n. 1 (2d Cir. 2008) (*quoting* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000)).

hearing actual voices when she would fall asleep during group therapy sessions and the staff would call her name in an attempt to wake her (T143).

On the nineteenth day of her treatment, plaintiff left the facility against medical advice after she became belligerent with a staff member (T143-144). Plaintiff left treatment alert and oriented (T145). Dr. Ferraro diagnosed plaintiff with alcohol, cannabis, cocaine and opiate dependence, Hepatitis C, mitral valve prolapse, and depression with severe psychosis (T141). He assessed plaintiff to have a GAF of 37 (T141).[4]

### 5.    Treatment at Sheehan Memorial Hospital

Plaintiff began in-patient treatment at Sheehan Memorial Hospital on November 13, 2006, for detoxification due to her progressive and excessive use of alcohol and cocaine (T263). Plaintiff told doctors that she drank a liter of vodka a day and used fifty dollars worth of crack cocaine per day (T265). Because plaintiff exhibited withdrawal symptoms, she was admitted to a medically-managed detoxification program, but she was discharged on November 15, 2006 because she "violated the admission criteria for safety". Id. Plaintiff was discharged in a stable condition. Id.

---

[4]    "[A] GAF of 31 to 40 signifies 'some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood'". *See* Paduani v. Commissioner of Social Security, 2010 WL 1816262, *3 (E.D.N.Y. 2010) (*quoting* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 34 (4th ed. 2000)).

### 6. Treatment at Niagara Falls Memorial Medical Center

On November 17, 2006, soon after her discharge from Sheehan Memorial, plaintiff went to the Niagara Falls Memorial Medical Center, complaining that she heard voices (T351). Plaintiff admitted that she used crack the previous day and was having thoughts of suicide (T352). Plaintiff was admitted for psychiatric treatment and diagnosed with major depression with recurrent psychiatric fantasies, opiate dependency, cocaine abuse, alcohol abuse in remission, personality disorder, hepatis C, and mitral valve prolapse (T358). Her GAF was assessed to be between 20 and 30 at intake, but increased to 50 at discharge (T360). Plaintiff received inpatient treatment until November 27, 2006 (T347).

### 7. Treatment at Cazenovia Recovery Systems, Inc.

From January 2008 through June 2008, plaintiff attended treatment at Cazenovia Recovery Systems (T331-345). During a January 15, 2008 evaluation, plaintiff admitted to drinking alcohol on New Years Day, using crack five days earlier, and smoking marijuana two months earlier (T336). She claimed to have last used heroin two years ago. Id. Plaintiff was assessed with a GAF of 45 (T345).

### 8. Consultative Evaluations

On May 18, 2006, Fenwei Meng, M.D., performed an internal medicine examination of plaintiff (T156-159). Her daily activities included cleaning, cooking, shopping, laundry, watching television and listening to the radio (T157). Dr. Meng reported normal findings, and opined that plaintiff had no limitations in speech, hearing, or vision, as well as full functioning in the spine, upper and lower extremities (T158).

On February 12, 2008, Kathleen Kelley, M.D., also performed an internal medicine examination (T198-201). Plaintiff stated that her only problem was Hepatitis C (T198). She also stated that "she cooks twice a week because she sees 'bugs', and she is scared" (T199). Dr. Kelley's clinical examination revealed normal findings, but that the plaintiff should not work with sharp objects, at heights, or with heavy equipment (T199-201). Dr. Kelley stated that plaintiff had no other limitations (T201).

Plaintiff was evaluated on May 18, 2010 by Renee Baskin, M.D., a psychologist (T160-164). Plaintiff reported that she completed the eleventh grade and planned to eventually obtain her GED (T160). She stated that she was employed in 1996, but left that position due to her drug use, and that she currently did not work because she did not "like human beings". Id. Plaintiff also admitted to a history of drug and alcohol abuse, but that she had ended her drug and alcohol use on March 17, 2006, and had been clean ever since (T161). Plaintiff also told Dr. Baskin that she could perform all activities of daily living by herself (T163).

Dr. Baskin determined that plaintiff's manner of relating, social skills, and overall presentation were adequate, and noted that she responded to questions and was cooperative (T162). There was no evidence of hallucinations, delusions, or paranoia. Id. Plaintiff demonstrated intact attention and concentration, could perform simple calculations, and showed intact recent and remote memory skills. Id.

Dr. Baskin determined that plaintiff's intellectual functioning was low to below average, insight was limited, and judgment was fair. Id. She diagnosed plaintiff with depressive disorder, polysubstance dependence/abuse in very early remission, and personality disorder with borderline features (T163). She determined that plaintiff could understand and follow simple

instructions independently, and could perform complex tasks with supervision; however, plaintiff may have trouble making appropriate decisions, relating to others, and dealing with stress. Id.

Dr. Baskin determined that plaintiff's "[d]ifficulties would be due to a history of substance abuse and very little time in recovery, as well as chronic and pervasive psychiatric illness. The results of the examination appear to be consistent with psychiatric and substance abuse problems, and this may significantly interfere with claimant's ability to function on a daily basis." Id.

On February 12, 2008, Thomas Ryan, Ph.D., a psychologist, evaluated plaintiff (T194-197). Plaintiff reported that she could dress, bathe, and groom herself, and that she performed some household chores with the help of a male friend who lived with her (T196). Plaintiff also told Dr. Thomas that she had never abused alcohol, that she had not used heroin or cocaine since 2004, and that she continued to receive methadone treatment (T195). Dr. Ryan noted that plaintiff's current symptoms of insomnia, dysphoric mood, irritability and auditory hallucinations could be related to her alcohol and drug dependence, and withdrawal. Id.

Dr. Ryan noted that plaintiff's language and thought processes were coherent, her cognitive functioning was average to low average, and her insight and judgment were poor (T195-196). He diagnosed plaintiff with post-traumatic stress disorder and polysubstance abuse, in remission with methadone maintenance (T197). Dr. Ryan also noted that plaintiff demonstrated no significant limitations in her ability to perform simple tasks, maintain a regular schedule, and follow and understand simple directions (T196). However, he opined that plaintiff had significant limitations in performing complex tasks, making appropriate decisions, relating

with others, and dealing with stress.  Id.  He found that these limitations were "consistent with psychiatric problems, which may interfere to some degree on a daily basis" (T197).

9.      **Hillary Tzetzo, M.D.'s Examination**

Dr. Tzetzo, a state agency review physician, reviewed plaintiff's medical records in July 2006, and determined that plaintiff's mental impairments did not meet or equal the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (T168-184). Based upon her mental and substance addiction disorders, Dr. Tzetzo opined that plaintiff could maintain attention, understand a work supervisor, follow directions in a work setting with limited public contact, and use judgment to make work-related decisions (T168, 180).

B.      **August 25, 2008 Administrative Hearing**

Plaintiff testified that she was born in 1967 (T484) and completed the eighth grade in special education classes, but was able to read and perform simple arithmetic (T485-487).  Plaintiff reported that she was also able to write phone messages and count change, but that she was unable to write a check (T486-487).  At the time of the hearing, plaintiff lived in a residential facility for substance abusers where she mopped, swept, did laundry, and made her bed (T501-502).

Although she received no treatment for her Hepatitis C, she reported that the condition caused her to be fatigued (T488).  Likewise, her depression resulted in mood swings, loss of appetite, and sometimes caused her to remain in bed for an entire day (T488-489). Plaintiff also stated that she experienced visual and audio hallucinations, such as people calling

her name (T491-492). Plaintiff reported that she last attempted to hurt herself in March 1998 (T494).

At the time of the hearing, plaintiff took methadone and testified that she believed that she would relapse if she stopped taking it (T488). Plaintiff started using cocaine in 1992, but ceased doing so in 2007 (T498-499). Similarly, plaintiff began using heroin in 1997, and stopped in 2006 (T497). Plaintiff stated that she wanted to stop abusing drugs and alcohol because they made her symptoms worse (T500). However, plaintiff also testified that her mental health condition has remained the same despite being sober since March 2008 (T512).

## C. ALJ Harvey's September 25, 2008 Decision

ALJ Harvey found that plaintiff had the severe impairments of methadone dependence, depression, and post-traumatic stress disorder, and the non-severe impairment of Hepatitis C (T18). ALJ Harvey found based on all of plaintiff's impairments, including substance abuse disorder, and her RFC, that there were no jobs in the national economy she could perform (T21).

However, ALJ Harvey further found that her "substance use disorder is a contributing factor material to the determination of disability" (T23). He also found that if plaintiff was to stop using drugs and alcohol, her RFC would permit her to perform a significant number of jobs in the national economy. Id.

## ANALYSIS

### A.  Scope of Judicial Review

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "the findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. Of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited.  This Court may not try the case *de novo*, nor substitute its findings for those of the Commissioner.  *See* Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984).  Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole.  *See* Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard".  Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999).  "Failure to apply the correct legal standards is grounds for reversal."  Townley, 748 F. 2d at 112.

**B.     The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. § 1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.     The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.     If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.     If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocations factors such as age, education, and work experience.

4.     If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [("RFC")]to perform his or her past work.

5.     If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000).  *See* C.F.R. §§ 404.1520, 416.920.

"New regulations, effective August 23, 2003, limit the Commissioner's burden at step five. *See* 20 C.F.R. 404.1560(c) . . . The Commissioner's step-four RFC determination (with the claimant bearing the burden of proof) now controls at both steps four and five. . . . The Commissioner applies the RFC determination from step four to meet his burden at step five. Using the claimant's RFC, the Commissioner must then show at step five that 'there is other gainful work in the national economy which the claimant could perform.'" Spain v. Astrue, 2009 WL 4110294, *3 (E.D.N.Y. 2009).

Plaintiff raises a series of challenges to ALJ Harvey's decision, including (1) that compliance with a prescribed course of methadone treatment cannot be considered under the drug addiction and alcoholism ("DA&A") regulations[5] to be a "contributing factor material to" plaintiff's disability and that the DA&A regulations cannot be applied to deny benefits because of the medically documented side effects of a medically prescribed course of treatment (plaintiff's memorandum of law [10], Points I and II); (2) that plaintiff's daily activities are not inconsistent with a finding that she is disabled (id., Point III); (3) that ALJ Harvey erred by substituting his opinion for medical expert opinion (id., Point IV); (4) that the evidence demonstrates that plaintiff is unable to perform sustained work activities (id., Point V); and (5) that ALJ Harvey failed to satisfy his burden of establishing that there is other work in the national economy that plaintiff can perform by failing to utilize a vocational expert. Id., Point VI.

---

[5]     I assume that she is referring to 20 C.F.R. §§ 416.935 and 404.1535 ("How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability").

**C.      ALJ Harvey's Evaluation of Plaintiff's Drug and Alcohol Use Must Be Clarified**

Plaintiff argues that compliance with a prescribed course of methadone treatment cannot be considered to be a "contributing factor material to" her disability, and that her psychiatric symptoms would worsen rather than improve if her methadone treatment ceased. Plaintiff's Memorandum of Law [10], Point I.  In response, the Commissioner argues that ALJ Harvey correctly concluded that plaintiff  had not stopped her drug use during the period at issue. Commissioner's Reply Memorandum of Law [11], Point 1.

"An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C). "The relevant inquiry in determining whether substance abuse is a 'material contributing factor' is whether an individual would still be disabled if he were to stop using alcohol and/or drugs." Pittman v. Astrue, 2010 WL 1407255, *3 (W.D.N.Y. 2010) (Skretny, J.).  The regulations set forth a detailed process for  making this determination:

> "(1)  The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b); 20 C.F.R. § 404.1535(b).

"The proper analysis by the ALJ in a case where the claimant has alcohol or drug addiction issues, is to first conduct the fivestep sequential evaluation 'without separating out the impact of alcoholism or drug addiction.'. . . If the ALJ determines that the claimant is not disabled, the claimant is not entitled to benefits and no further analysis is necessary. Id. If, considering the impact of the relevant addiction, the ALJ determines that the claimant is disabled, then the ALJ should proceed under section 404.1535 or 416.935, to determine if the claimant 'would still be found disabled if he or she stopped using alcohol or drugs.' Id." Bowers v. Astrue, 2010 WL 2723220, *16 (D.Or. 2010) (quoting Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001)). "The disabled person bears the burden of proving that his alcoholism is not a contributing factor material to the disability determination." White v. Commissioner of Social Security, 302 F.Supp.2d 170, 173 (W.D.N.Y. 2004)(Larimer, J.).

Here, ALJ Harvey determined that plaintiff's severe impairments included methadone dependence, depression and post traumatic stress disorder (T18). He found that plaintiff's "substance use disorder is a contributing factor material to the determination of disability" (T23) , but also that her "methadone dependence is a contributing factor material to the determination of disability" (T21), thereby making it unclear whether anything other than her methodone dependence was a contributing factor material to the determination of disability. In turn, he found that if plaintiff "stopped substance abuse [,] . . . there would be a significant

-14-

number of jobs in the national economy that [she] could perform" (T23). In reaching this determination, ALJ Harvey noted that "[i]f the claimant stopped the substance abuse, the undersigned finds that the claimant's statements regarding her symptoms and resulting limitations are generally credible, but not to the extent alleged. The undersigned is not convinced that the claimant has stopped using drugs. The claimant testified that she takes methadone daily and admitted that she would relapse into using heroin if she stopped taking the methadone" (T22-23).

At the outset, I find that methadone, as a prescribed medication, does not preclude it from being assessed for materiality under 20 C.F.R. § 416.935. *See* Dye v. Commissioner of Social Security, 2008 WL 4449556, *19 (S.D.Ohio 2008) (on remand directing the ALJ to "determine which of plaintiff's current physical and mental limitations, upon which the defendant based plaintiff's current disability determination, would remain if plaintiff stopped using plaintiff's prescribed medications of Methadone, Xanax, Neurontin and Effexor and then determine whether any or all of plaintiff's remaining limitations would be disabling").

The discrepancy in the parties' remaining arguments appears to arise from the fact that ALJ Harvey's decision is not clear on whether he concluded that plaintiff's substance abuse, methadone dependence, or one or both are material to the determination of disability. He states both that the "*substance use* disorder is a contributing factor material to the determination of disability" (T23) (emphasis added) and that "*methadone dependence* is a contributing factor material to the determination of disability" (T21) (emphasis added). This is a significant ambiguity.

For example, if plaintiff's methadone use (rather than her drug and alcohol abuse) was found by ALJ Harvey to be a contributing factor material to the determination of disability, there would not be substantial evidence to support ALJ Harvey's conclusion that her RFC would improve if she ceased using methadone. Dr. Ryan found plaintiff's polysubstance abuse to be "in remission on methadone maintenance" (T197), and Dr. Baskin found that plaintiff's "psychiatric and substance abuse problems . . . may significantly interfere with the claimant's ability to function on a daily basis" (T163). Thus, it is evident from the consultative examiners that plaintiff's substance abuse would reoccur if she ceased using methadone, which in turn would significantly interfere with claimant's ability to function. Therefore, I recommend that on remand, this aspect of ALJ Harvey's opinion be clarified.

Plaintiff also argues that ALJ Harvey "recognizes some of the side effects of [her] use of methadone, but does not consider them as necessary factors in assessing her overall functional abilities. Rather, he uses them against her only in a DA&A sense." Plaintiff's Memorandum of Law [10], p. 8. This argument is not supported by the record. In ALJ Harvey's decision he clearly accounted for plaintiff's limitations associated with plaintiff's methadone use in making his RFC determination. For example, he found that "[d]ue to methadone dependence, [he] has occasional limitations in the ability to perform certain activities within a schedule, maintain regular attendance, be punctual within customary tolerance, and complete a normal workday and workweek. Due to methadone dependence, the claimant can only work in a job with a minimal amount of stress" (T20). Therefore, this argument is rejected.

**D.        ALJ Harvey's RFC Determination is Flawed**

Plaintiff argues that ALJ Harvey erred in finding that she could perform sustained work based upon her self-described activities and her prior work history.  Plaintiff's Memorandum of Law [10], Point III.   In response, the Commissioner argues that ALJ Harvey properly assessed plaintiff's credibility.  Commissioner's Reply Memorandum of Law [11], Point 2.

ALJ Harvey found that if plaintiff stopped "the substance use", she had the RFC to "lift/carry/push/pull 100 pounds occasionally and 50 pounds frequently, sit 2 hours in and 8 hour day and stand/walk 6 hours in an 8 hour day.  She would have occasional limitations in the ability to understand, remember and carry out detailed instructions and maintain attention and concentration for extended periods. The claimant can only work in a job with a moderate amount of stress" (T22).  In reaching this RFC determination, ALJ Harvey made the following assessment:  "The claimant's daily activities include cleaning, doing laundry, making beds, sweeping, and mopping.  The claimant cleans all of the windows in the building in which she resides.  She shops, carries packages, and attends church.  She is able to bathe/dress herself.  The claimant's allegations of disability are inconsistent with her activities of daily living" (T22-23).

"[A] claimant need not be an invalid to be found disabled' under the Social Security Act".  <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998).  "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule".  SSR 96-8P, 1996 WL 374184, *1 (S.S.A.).

ALJ Harvey " failed to take into account that, even if the Plaintiff does perform the activities stated in his opinion . . . , other evidence in the record more than suggests he does not perform them on a regular and continuing basis-the standard which would allow an ALJ to use daily activities to negatively impact his credibility." Reinard v. Astrue, 2010 WL 2758571, *8 (W.D.N.Y. 2010) (Telesca, J.). For example, plaintiff testified that washing the windows takes 20 minutes a day, but two days a week she is unable to wash the windows (T510, 511). Her testimony also makes clear that she did not shop ("Q. Do you shop? A. If I have to") or sweep ("Q. Do you sweep? A. Yes, I try to") on a sustained basis (T502). She also testified that she lies down from approximately 12:00 p.m. to 5:00 p.m. everyday because of pain and fatigue (T511).[6] Thus, the mere fact that plaintiff is able to perform some activities when her condition allows her to do so is not inconsistent with plaintiff's claim that she is disabled from regular and continuous employment.

"[A]n ALJ's failure to make a specific finding about the claimant's ability to maintain employment can be a basis for reversal. Watson v. Barnhart, 288 F.3d 212, 218 (5th Cir. 2002); Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir.1986). However, an ALJ need not 'make a specific finding regarding the claimant's ability to maintain employment in every case.' Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003). A separate finding is not required 'absent evidence that a claimant's ability to maintain employment would be compromised despite his

---

[6]     *Compare with* Schacht v. Barnhart, 2004 WL 2915310, *11 (D.Conn. 2004) ("The evidence of her significant child care responsibilities, during which time she had custody of her niece while raising her own son as well despite her migraines, reasonably supports a finding that the Plaintiff could work on a regular and continuing basis under the limitations set forth in the ALJ's RFC finding").

ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC.'" Daniels v. Commissioner, Social Security Administration, 2010 WL 3119184, *2 (N.D.Tex. 2010).

Given the lack of a work history since 1988 (T42) and medical evidence that her depression and post traumatic stress disorder could significantly interfere with her ability to function on a daily basis (T163 (Plaintiffs "psychiatric and substance abuse problems . . . may significantly interfere with the claimant's ability to function on a daily basis")),  I conclude that ALJ Harvey was obligated to provide some explanation for plaintiff's ability to maintain employment.

Plaintiff also argues that ALJ Harvey substituted his opinion for medical expert opinion when he concluded that "the concluded that the medical evidence does not support the Plaintiff's allegations about his [*sic*] limitations".  Plaintiff's Memorandum of Law [10], Point IV.  In response, the Commissioner argues that "the medical evidence in this case supported a finding that plaintiff would not be disabled but for her alcohol and drug abuse" and that her medical records indicate that her "alcohol and drug use caused or significantly worsened her mental health symptoms".  Commissioner's Memorandum of Law [11], p. 4-5.

It is well settled that "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." Goldthrite v. Astrue, 535 F.Supp.2d. 329, 339 (W.D.N.Y.2008) (Telesca, J.); Gilbert v. Apfel, 70 F.Supp.2d 285, 290 (W.D.N.Y.1999) (Larmier, J.); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998).

The medical evidence presented in the record fails to assess plaintiff's mental impairments separate from her methadone, drug and alcohol use. Dr. Ryan's report found that plaintiff's symptoms of dysphoric mood, insomnia, irritability and auditory hallucinations were related to her drug and alcohol use and withdrawal (T195). However, there does not appear to be any medical assessment in the record of the limitations associated solely with plaintiff's depression and post traumatic stress disorder absent any underlying drug, alcohol and methadone use.

The RFC determination is reserved for the commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). However, "an ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record. . . . . Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." <u>Lewis v. Commissioner of Social Security</u>, 2005 WL 1899399, *3 (N.D.N.Y. 2005).

Thus,"an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself.'" <u>Deskin v. Commissioner of Social Security</u>, 605 F. Supp. 2d 908, 912 (N.D.Ohio 2008). *See* <u>Isaacs v. Astrue</u>, 2009 WL 3672060, *11 (S.D.Ohio 2009) ("The ALJ rendered her RFC finding for medium work without reference to any medically determined RFC opinion bridging the raw medical data to specific functional limitations. Because there is no medical source opinion supporting the ALJ's finding that the

plaintiff can perform 'medium' work, the Court concludes the ALJ's RFC determination is without substantial support in the record").

In light of the non-adversarial nature of a benefits proceeding, where there is a gap in the record, the ALJ must affirmatively develop evidence to fill it. Pratts v. Chater, 94 F. 3d 34, 37 (2d Cir. 1996). This duty exists whether or not plaintiff is represented by counsel. Perez v. Chater, 77 F. 3d 41, 46 (2d Cir. 1996). "Although it is the claimant's obligation to prove her disability and provide all relevant medical evidence, '[i]f the evidence does not give the ALJ 'sufficient medical evidence about [the claimant's] impairment to determine whether [the claimant is] disabled,' a consultative exam may be ordered, at SSA's expense.'" Aristizabal v. Astrue, 2009 WL 4666035, *1 (E.D.N.Y. 2009).

Although I recognize that "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment", this is not such a case. Manso-Pizarro v. Secretary of Health and Human Services, 76 F. 3d 15, 17 (1st Cir. 1996). Given the absence of evidence in the record of plaintiff's functional limitations arising solely from her mental impairments, I conclude that ALJ Harvey should have ordered a consultative psychological examination or attempted to contact plaintiff's treating physicians to complete the record in order to make a proper RFC determination. See Hopper v. Commissioner of Social Security, 2008 WL 724228, *11 (N.D.N.Y. 2008) ("Since there was little to no evidence in the record to determine Hopper's RFC properly, the ALJ should at least have attempted to contact Hopper's treating physicians. . . . Additionally, the ALJ could have employed a state agency medical consultant rather than a disability analyst to render an assessment of Hopper's RFC. The record reveals that

the ALJ made no such attempt to obtain the opinions of any treating physicians or other medical sources by way of letters requesting the information nor by subpoena"); Hogan v. Astrue, 491 F. Supp. 2d 347, 354-355 (W.D.N.Y. 2007) (Larimer, J.) ("The ALJ found that plaintiff retained the RFC to perform less than the full range of sedentary work. In reaching this conclusion, the ALJ did not cite to a medical opinion in the record. It is unclear whether the ALJ relied on the opinions of plaintiff's treating physicians, or the opinions of the examining and consulting physicians. In fact, there is very little in the record regarding plaintiff's ability to perform basic work activities. In this respect, the ALJ needs to further develop the record . . . because the ALJ failed to cite to any medical opinion to support his RFC findings, the Court is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion"). Without this additional medical evidence ALJ Harvey, as a layperson, could not bridge the gap between plaintiff's depression and post traumatic stress disorder and the functional limitations that flow from these impairments without the overlay of plaintiff's methodone, alcohol and drug use.

Therefore, I recommend that this case be remanded to the Commissioner to conduct a proper analysis of plaintiff's RFC in the absence of his alcohol and drug use.

**E.      ALJ Harvey Did Not Err  in Failing to Obtain a Vocational Expert**

Having concluded that ALJ Harvey improperly determined plaintiff's RFC in the absence of his drug and alcohol use, I need not analyze plaintiff's argument at Step Five that ALJ Harvey  erroneously utilized the Medical Vocational Guidelines ("Grids" or "Guidelines") instead of procuring the testimony of a vocational expert to "accurately depict" plaintiff's

occupational limitations. Plaintiff's Memorandum of Law [10], Point VI.  However, in the event that my recommendation finding ALJ's RFC determination to be flawed, I would find that ALJ Harvey did not err in failing to contact a vocational expert.

As explained by the Second Circuit: "If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments. . . .  Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate. By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp v. Bowen,  802 F.2d 601, 605 -606 (2d Cir. 1986).

ALJ Harvey found that  "[i]f the claimant stopped substance abuse, the claimant's ability to perform work at all exertional levels would be compromised by nonexertional limitations.  However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels.  Absent the claimant's methadone dependence, a finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.  There is not a significant erosion of the claimant's occupational base, pursuant to SSR 85-15" (T23).

Pursuant to SSR 85-15, which provides guidance on using the Grid when a claimant has solely non-exertional limitations, instructs that "the basic mental demands of

competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base". 1985 WL 56857, *4 (S.S.A.).

Based upon ALJ Harvey's RFC, which found that plaintiff only had "*occasional* limitations*" in this regard (T22 (emphasis added)), I find that ALJ Harvey did not err in failing to contact a vocational expert.


## CONCLUSION

For these reasons, I recommend that defendant's motion for a judgment on the pleadings [8] be denied, and that plaintiff's cross-motion for a judgment on the pleadings [10] be granted in part, and denied in part, and that the case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 12, 2010 (applying the time frames set forth in Fed. R. Civ. P. 6(a)(1)(C), 6(d), and 72(b)(2)).  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely...waives any right to further judicial review of [this] decision.  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).  Moreover, the

district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure of the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), may result in the district judge's refusal to consider the objection.

**SO ORDERED**.

DATED:        October 26, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge